IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANA PORTER BEDDINGFIELD,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER AMENDING ORDER EXCLUDING TIME AND DISMISSING INDICTMENT WITH PREJUDICE<br><br><br><br>Case No. 2:04-CR-346 TS |

This matter came before the Court on May 16, 2005, for hearing on Defendant's Motion to Dismiss the Indictment With Prejudice.

I.  FACTUAL AND PROCEDURAL BACKGROUND

This case has a long procedural history that began with the preceding case, 2:01-CR-447 TS (the first case). In that case, Defendant was indicted on August 1, 2001, on 15 counts of Bank Fraud, a violation of 18 U.S.C. § 1344. He hired retained counsel. There followed a series of delays, the most significant of which was a 10-month period between November 4, 2002, and September 10, 2003, when the case inexplicitly languished with no action by the government and no request to exclude the time for

Speedy Trial Act purposes. The court discovered the delay and, on September 12, 2003, set the matter for a status conference to determine the reason for such extraordinary delay.

At the status conference, the court declined the government's request to retroactively exclude the long period of inaction by the government. The parties explained that one of the reasons for the delay was a difficulty pertaining to the FBI's handwriting expert.

On February 26, 2004, the court *sua sponte* dismissed the August 1, 2001, Indictment. The court found the case was "unique and present[ed] a clear and significant violation of the Speedy Trial Act, such as this Court has not seen before." However, the court dismissed the Indictment without prejudice based on its findings that Defendant had remained on pretrial release the entire case, had agreed to several continuances, and there was no actual prejudice to Defendant resulting from the delay.

On May 26, 2004, Defendant was re-indicted on the same counts as in the dismissed Indictment plus five additional counts, for a total of twenty counts of Bank Fraud, a violation of 18 U.S.C. §1344. Defendant was arraigned on June 17, 2004, and trial was set for August 23, 2004. Defendant retained different counsel for this present case.

On July 15, 2004, Defendant's new counsel moved for a continuance noting the complexity of the case and the necessity for time to prepare for trial. The court continued the trial to November 8, 2004, and excluded the time. On October 12, 2004, Defendant filed a Motion in Limine, or in the Alternative to Continue Trial due to the government's failure to timely disclose information about its new handwriting expert and the expected evidence to be presented by such expert. Defendant's counsel had inadvertently

2

discovered that a handwriting analyst would be used. The handwriting analyst to be used is not an FBI handwriting expert as was the expected situation in the first case. Due to the government's failure to timely disclose the evidence of the handwriting expert, the court continued the trial setting and excluded the time up to the new trial setting on February 11, 2005.

Thereafter, Defendant made repeated requests for information regarding the handwriting analyst's CV and the supporting documentation upon which he had relied. Despite diligent and repeated efforts by Defendant's current counsel, such information was not forthcoming by the time of the February 11, 2005, final pretrial conference.

By this time, justifiably concerned about his inability to obtain promised copies of documents, Defendant's counsel again requested copies of the specific documents analyzed by the government's expert, but still not provided to the defense. Defense counsel had previously made two separate trips to the FBI office to attempt to obtain copies of all of the government's evidence against his client.

According to the government's counsel, on February 11, 2005, after the final pretrial conference, he went to the FBI offices to identify and copy and mark as exhibits the materials requested by Defendant. At that time, he discovered that the original FBI case agent had stored thousands of documents in a drawer outside of the evidence room. These documents were not checked in as evidence. These documents had been in the FBI's possession since before the Indictment in the first case.

The government immediately notified defense counsel, disclosed the documents to the defense and requested a hearing. Defendant moved to vacate the trial setting of February 22, 2005 and to dismiss the indictment with prejudice.

At the February 14, 2005 hearing on the motion, the court continued the trial date and excluded the time to a new trial setting on May 30, 2005. However, the court took the matter of Defendant's Motion to Dismiss under advisement for the reason that the parties had not had time to fully examine the undisclosed documents and their implications for the ability to prepare an effective defense. The court notified the parties that the time may not be excluded if, after he had an opportunity to review the documents, Defendant made a motion otherwise. The government's counsel was to prepare the order. It is indicative of the government's inattention to the prosecution of this case that the government's counsel did not prepare the order until shortly before the hearing on the current motion.

Having had an opportunity to consider the documents, Defendant filed an additional brief requesting dismissal on April 15, 2005, and the court set the matter for hearing.

Having considered the entire record in this case and in the first case, the court finds that the government's failure to disclose the documents at issue has materially prejudiced Defendant's ability to defend against these charges. The undisclosed documents include loan documents dated from 1997 through 1999. The documents reveal the existence of many additional potential witnesses, none of whom were interviewed by the FBI. Because of the passage of nearly four years, it would be difficult to locate and contact these individuals regarding the case. Further, the passage of time prior to investigation makes it less likely that individuals will have accurate recollection of the events at issue. To

further complicate matters, the FBI agent in charge of this case was reassigned and a new agent, unfamiliar with the documents and the investigation, was appointed in 2004.  As a result, all of the money Defendant paid to prior counsel and to the investigator hired by former counsel, and much of the money to present counsel, was wasted because counsel and the investigator were unaware of 3,000 documents.  At this point, Defendant lacks the resources to even begin to adequately investigate the facts underlying the 3,000 documents, which would require locating the persons involved in the allegedly fraudulent loans and obtaining from them such information as to why each loan was not repaid.

The government represents that at trial it plans to introduce a summary of these loan documents and allege they were fraudulent.  The government's position is that this information will support its position that, while he did not personally receive the proceeds of the alleged bank fraud, Defendant participated in the allegedly fraudulent loans in order to keep his business afloat.

The court's finding in the first case that there was no actual prejudice to Defendant was made when the court was unaware of the 3,000 undisclosed documents or the undisclosed lists of potential witnesses.  The court finds that due to the undisclosed evidence, it is now not possible for the Defendant to prepare an adequate defense  by the May 31, 2005, trial setting.

Now that the extent and import of the undisclosed documents is known, the court finds that the time should not have been excluded from the Speedy Trial Act.  The documents were discovered when the government's counsel finally went to the FBI's office to mark and provide the exhibits relating to the handwriting analyst which defendant had

been repeatedly requesting. Those exhibits should have been turned over in a timely fashion when the government decided to use the handwriting analyst–during the first case.

## II.  SPEEDY TRIAL ACT

### A.  Excluded Time

The Speedy Trial Act clock began to run on June 17, 2004. Time is excluded for the following times and for the following reasons: July 15, 2004, through July 19, 2004, is excluded due to the pending Stipulated Motion to extend time and continue trial. August 24, 2004, through November 8, 2004, is excluded pursuant to this court's July 19, 2004 Order. November 8, 2004, through February 22, 2005, is excluded pursuant to Defendant's October 12, 2004 Motion in Limine or, in the Alternative, to Continue Trial.[1] February 22, 2005, through March 16, 2005, is excluded as the period of time in which Defendant's February 14, 2005, Motion to Dismiss was under advisement.[2]  April 15, 2005, through May 17, 2005, is excluded pursuant to the Renewed Motion to Dismiss filed on April 15, 2005.

If Defendant had not filed his renewed Motion to Dismiss, the time from February 11, 2005, through May 31, 2005, would also be excluded pursuant to the order excluding time announced at the February 11, 2005 hearing. However, as the court announced at

---

[1] The October 12, 2004 Motion was filed during a time already excluded by the July 19, 2005 Order. The government did not file a Memorandum in Opposition to the October 12, 2004 Motion.

[2] This motion was filed and taken under advisement on February 14, 2004. Thus, the 30-day limit for excluded time for an under advisement motion began to run during a period of time that was already excluded.

that hearing, the time would be excluded unless Defendant filed something showing it should not be. For the reasons stated above, the court will modify the order excluding time and will not exclude the time after the date of the Defendant's Renewed Motion. Therefore, only the time between February 11, 2005, through April 15, 2005, is excluded. Thus, the 70-day limit for prosecution mandated under the Speedy Trial Act expired on April 21, 2005. Modifying the order excluding the time results in there being a Speedy Trial Act violation.[3]

The government argues that even if the court were to vacate its tolling order, the filing of Defendant's own Motion to Dismiss, under advisement with the court since the last hearing, tolled the Speedy Trial Act time. However the tolling period for a motion under advisement is for a period not to exceed 30 days, 18 U.S.C. 3161(h)(1)(J), which expired on March 16, 2005. The current Motion was filed on April 15, 2005.

B. Dismissal With Prejudice

"When more than seventy non-excluded days have passed, the Act requires dismissal of an affected indictment on motion by the defendant. 18 U.S.C. § 3162(a)(2). While dismissal of the indictment is mandatory, the district court retains discretion to determine whether the indictment is dismissed with or without prejudice." *U.S. v. Cano-Silva,* 402 F.3d 1031, 1034 (10th Cir. 2005).

---

[3]If the court vacated the Order excluding time as of the date of entry of this Order, the 70 days would end on May 23, 2005. If the court vacated its Order excluding time as of the time of the February 14, 2005 hearing where the court announced it would exclude time unless Defendant filed something, the 70-day time would have expired on March 23, 2005 (the 30-day exclusion for the under advisement status of the Motion to Dismiss having continued through March 16, 2005).

The Speedy Trial Act instructs that, "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2).  Prejudice to the defendant occasioned by the delay should also be considered in determining whether to dismiss an indictment with or without prejudice. *United States v. Taylor*, 487 U.S. 326, 333-34 (1988).  "A step by step analysis of each factor is necessary." *U.S. v. Russo*, 741 F.2d 1264, 1267 (10th Cir. 1984).

> In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay. *Saltzman,* 984 F.2d at 1093. If the violation is the result of "intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Id.* at 1093-94.

*U.S. v. Cano-Silva,* 402 F.3d 1031, 1036 (10th Cir. 2005).

The charges contained in the 20-count Indictment against Defendant are serious.  However, they are property crimes, not involving injury to person, firearms or drugs.  Thus, the court balances the seriousness of the charges against the government's delay. *U.S. v. Smith*, 225 F.Supp.2d 1305, 1310 n.6 (D. Utah 2002) (citing *Saltzman*, 984 F.2d at 1093).

> In evaluating the circumstances precipitating the dismissal, the court is to focus " 'on the culpability of the delay-producing conduct.' " *United States v. Saltzman,* 984 F.2d 1087, 1093 (10th Cir. 1993) (quoting *United States v. Hastings,* 847 F.2d 920, 925 (1st Cir. 1988)). "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Id.* at 1093-94.

8

*U.S. v. Jones,* 213 F.3d 1253, *1257 (10th Cir. 2000).

In the present case, there is not an allegation of *intentional* dilatory conduct or bad faith by the government.  Nevertheless, the court finds that there has been a "pattern of neglect on the part of the government."  In this case in particular, there has been no timely disclosure of information to defense counsel.   Despite diligent and repeated efforts by defense counsel, he has been unable to obtain from the government the information required to present a defense.  The information regarding the handwriting analyst was known to the government as early as the conclusion of the first case and at least since the start of this case, yet the underlying documents still had not been turned over at the time of the final pretrial conference.  The government's delay forced the defense to spend months of time and money on the issue of discovering information relevant to the handwriting expert--an issue that would never have arisen if there had been timely disclosure of the handwriting expert's information.  When, after the final pretrial conference, the government's counsel finally made the effort to locate and mark the materials that the defense had been requesting, the thousands of undisclosed exhibits were revealed.  Those exhibits should have been timely turned over to the defense as part of the expert's report during the preceding case.

The court finds that this case has consistently been handled as a nonexistent priority by the government resulting in a pattern of neglect to the prejudice of the Defendant.  The first case languished in limbo for many months due to this neglect.  Then the government failed to turn over necessary information regarding the fingerprint analyst until the eve of the February 2005 trial setting.  The FBI in particular has been negligent in the manner in

which it handled the 3,000 documents for three-and-one-half years. The lackadaisical attitude of the government, both by the FBI and the U.S. Attorney's office, has prejudiced this Defendant's ability to prepare and present his defense.

The court considers that impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice would be negative. These charges were previously dismissed without prejudice due to the complete inaction by the government. There is no telling how long the inaction would have continued had the court not discovered that the case was languishing. In the present case, the government's continued pattern of dilatory conduct has further prejudiced Defendant. To allow yet another reprosecution would make a mockery of the spirit and purpose of the Speedy Trial Act.

Finally, the court considers the prejudice to Defendant occasioned by the delay. *Taylor*, 487 U.S. at 34. As noted above, the court finds that the delay in turning over the 3,000 documents until the eleventh hour in the present case has materially prejudiced Defendant's ability to prepare and present an adequate defense to the 20 counts alleged in the Indictment.

In summary, the court finds that Defendant has shown cause to modify the court's order excluding the time, and consequently finds that there is a Speedy Trial Act violation. Upon the entire record in this case the court finds and concludes that the Indictment should be dismissed, with prejudice. The Court finds that this action best serves the administration of justice and the rights of Defendant in this case. The Court will therefore dismiss this case with prejudice.

III.  SIXTH AMENDMENT

Further, in addition to the Speedy Trial Act issue, the court finds that this case raises the issue of a Sixth Amendment speedy trial violation.  The Sixth Amendment to the United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

> The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process.  Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.
>
> * * *
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker v. Wingo,* 407 U.S. 514, 527 and 530 (1972)(footnotes omitted).

In *Doggett v. United States,* 505 U.S. 647 (1992) the U.S. Supreme Court further explained that courts should balance "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Id.* at 651 (citing *Barker,* 407 U.S. at 530).

> The threshold factor to consider is the length of the delay. We need only inquire into the other factors if the period of delay is "presumptively prejudicial."  Here we find that the delay of approximately seven months, even if not excusable, is not "presumptively prejudicial" and, therefore, a *Barker* analysis is not necessary. *See Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992) ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

*U.S. v. Lugo,* 170 F.3d 996, 1002 (10th Cir. 1999).

For the purposes of Sixth Amendment analysis, the actual delay is the nearly four years from the original Indictment in the first case to the present.  This is a presumptively prejudicial length of delay.

Further, even if the court were to consider only the delay in the present case, the delay is from June 17, 2004 to the present, approximately 11 months.  Under the circumstances of this case, the court finds that such time is presumptively prejudicial. Especially in light of the fact that three quarters of the counts were previously pending in the first case.

The reason for the delay is the government's pattern of dilatory conduct in this case, more fully set forth above.  For Sixth Amendment purposes, the court again notes that it is particularly significant that the undisclosed documents turned up when the government's attorney made the effort to mark the underlying documents that should have been turned over in the first case or early in the present case.   Clearly, the government--not the Defendant--is more to blame for the delay.  The Defendant did request the first continuance in this case due to its complexity.  However, the second continuance, while

requested by Defendant was entirely the result of the government's failure to disclose to the defense its intention to use the handwriting expert and to turn over adequate information relating to the expert.  The FBI's complete failure to meet its responsibility regarding the undisclosed information has created further and seemingly incurable delay. It now is not possible to determine if the FBI's failure would have been discovered earlier had the government timely met its responsibility to mark and turn over underlying documentation.

The court finds that, in due course, the defendant asserted his right to a speedy trial. In the present case there has been a diligent defense and a timely assertion of the right to a speedy trial.

Finally, the court finds, as noted above, that Defendant has suffered prejudice as a result of the delay. The United States Supreme Court has discussed this factor as follows:

> We have observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.  Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

*Doggett*, 407 U.S., at 532 (internal citations partially omitted).

It is true that Defendant has remained on pre-trial release throughout the pendency of this case.  However, it is also true that Defendant has been under the cloud of criminal

charges, with the resulting stress and anxiety for any criminal defendant and his or her family, for four long years with no discernable progress to resolution. As noted above, the court's finding of no actual prejudice to the government in the first case was made without the benefit of knowing that the government had thousands of undisclosed documents including lists of potential witnesses. Now, all these years later, with Defendant's resources spent preparing for a defense based on limited exhibits, the government has basically sprung an overwhelming amount of new evidence on the defense on the eve of trial. Although one of the 3,000 documents is known to be exculpatory, due to "dimming memories," previous fruitless expenditure of defense resources and lost time, it is likely that Defendant has lost the opportunity to determine the extent to which any other of the documents might be shown to be exculpatory. As noted in *Doggett*, this form of prejudice is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The case cited by the government, *U.S. v. Golyansky*, 291 F.3d 1245, 1249-50 (10th Cir. 2002), is inapposite. In *Golyansky*, the Tenth Circuit held that it was error for the trial court to exclude a government witness as a sanction for the failure to comply with a discovery order–dismissal under the Speedy Trial Act was not at issue.

Having weighed the factors set forth in *Barker* and *Doggett*, and concluding that the Defendant has been prejudiced in the defense, the court finds and concludes that the government has violated Defendant's right to a speedy trial under the Sixth Amendment. Thus, even if the court did not vacate the order excluding time under the Speedy Trial Act, the court finds that this is the rare case where there has been a violation of the Sixth

Amendment right to a speedy trial even in the absence of a violation of the Speedy Trial Act.

## IV. ORDER

Based upon the foregoing, it is therefore

ORDERED that the court's Order continuing trial and excluding time is modified as follows: the time is excluded for Speedy Trial Act purposes from February 22, 2005, through April 15, 2005, only. It is further

ORDERED that the Defendant's Motion to Dismiss the Indictment with Prejudice is GRANTED. It is further

ORDERED that the Indictment against Defendant is DISMISSED, with prejudice and the Clerk of Court is directed to close this case forthwith.

SO ORDERED.

DATED this 17th day of May, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge